[Civ. No. 19307. First Dist., Div. One. Nov. 30, 1960.]

THE PEOPLE, Respondent, v. ONE 1959 PLYMOUTH SEDAN, ENGINE NO. M264103738, Defendant; JOSEPH S. GALVIN et al., Appellants.

Albert E. Polonsky and Orrick, Dahlquist, Herrington & Sutcliffe for Appellants.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Appellant Galvin, the registered owner of the involved automobile, and appellant First Western Bank and Trust Company, the legal owner, appeal from a judgment declaring the automobile forfeited to the State of California because it ''was used to unlawfully keep, deposit, and transport narcotics'' in violation of section 11610 of the Health and Safety Code. Appellants' contentions that (1) the respondent did not produce sufficient evidence of violation of section 11610 to support the judgment of forfeiture, and (2) the trial court, sitting without a jury, committed prejudicial error, cannot be sustained. Respondent produced sufficient evidence from which the trier of fact properly could infer that the registered owner, when riding in the car immediately prior to his arrest, possessed narcotics. Nor did the trial judge's remarks, though perhaps somewhat informal, constitute prejudicial error.

The testimony discloses that on May 31, 1959, at 11 p.m., Officers Bigarani and Cuneo, while walking east along Union Street in San Francisco, were informed that an accident had just occurred at the intersection of Union Street and Grant Avenue. They proceeded toward the intersection, met two men staggering down Union Street, stopped them, and took them to the scene of the accident. About 5 or 10 minutes later appellant Galvin approached the officers and admitted

that he owned, and had driven, the car. Although Galvin testified at the trial he so informed the officers, he denied that he had been the driver. Officer Bigarani testified that Galvin appeared to be "under the influence of some type of intoxicant or stimulant" but "[a]t this time it was hard to determine." He also testified that the other four occupants of the car, the two men the officers had apprehended leaving the scene, and a man and woman at the scene, also appeared to have "either been drinking or using narcotics." The officers found pills, believed to be barbiturates, in the possession of two of the passengers.

The officers found further evidence of narcotics on the trip to, and arrival at, the station. Officer Bigarani transported appellant Galvin to the police station in his private vehicle; Officer Cuneo took the other four people in the police wagon. On the way to the station in the police wagon another passenger threw down a cigarette package containing a "crutch" (used as a holder to smoke marijuana cigarettes). At the station the officers searched Galvin and found a small butt of a marijuana cigarette, called a "roach," in the pocket of his jacket. Galvin denied knowledge of the roach. At the trial, Galvin likewise denied smoking marijuana or knowing that any of his apprehended companions did so, but he admitted the jacket belonged to him and that he had worn it in the car. The officers booked Galvin for driving while under the influence of an intoxicant.

Respondent filed notice of seizure and intended forfeiture proceedings against the vehicle alleging violation of section 11610 of the Health and Safety Code. Appellant Galvin answered, admitting that he was the registered owner, but denying that he violated section 11610. The answer of First Western Bank and Trust Company alleged that, before consummating the conditional sale contract, the bank reasonably investigated appellant Galvin's moral character. The bank sought release of the car or the sum of $3,550.88 in discharge of the contract.

The Superior Court of the City and County of San Francisco, sitting without a jury, heard the case and rendered a judgment for respondent declaring the car forfeited to the state. The court found that defendant automobile "was used to unlawfully keep, deposit, and transport narcotics, to wit, a quantity of marijuana, and said marijuana was unlawfully and knowingly possessed by Joseph S. Galvin, registered owner of the said defendant vehicle." The court also found

that appellant bank had not reasonably investigated appellant Galvin's moral character in order to be protected in the amount of its loan.

Appellants Galvin and First Western Bank appeal on the grounds of (1) insufficiency of the evidence, and (2) misconduct of the trial court. The bank does not challenge the court's finding regarding its investigation of Galvin's character.

As to the insufficiency of the evidence, Galvin admitted owning and wearing in the car a jacket in which officers found a cigarette butt containing marijuana. Even though Galvin denied knowledge of the butt's presence, the trier of fact properly could infer that he had possessed the marijuana in his pocket while in the car and that he knew of its presence.

The courts have held that, despite denial of an owner that he knew of the presence of a narcotic, the trial court may infer from the facts that the owner did possess such required knowledge. (*People* v. *One 1956 Porsche Convertible* (1959), 175 Cal.App.2d 251 [345 P.2d 986].) Thus in *People* v. *One 1952 Chevrolet* (1954), 128 Cal.App.2d 414 [275 P.2d 509], the evidence disclosed that two marijuana cigarettes were found on the floor of the car under the driver's seat and that the owner, although denying knowledge of their presence, made a movement toward them. The court held that the trier of fact could infer such knowledge from the presence of the narcotic in the car and from the action of the owner. Significantly, the court in *People* v. *One 1941 Buick Club Coupe* (1946), 72 Cal.App.2d 593 [165 P.2d 44], upheld an inference of knowledge, sufficient to support the judgment, from the presence of narcotics on the floorboard of the car, under the seat, despite the driver's denial of such knowledge. In an analogous situation we have concluded that a defendant knowingly possessed a narcotic concealed in his hat. (*People* v. *Tolliver* (1960), 179 Cal.App.2d 736, 739 [4 Cal.Rptr. 271].) In all of these cases the courts have held that the trier of fact, in resolving this issue, need not be bound by the denial of knowledge, but may infer such knowledge from the presence of the narcotic under the circumstances of the case.

Appellant Galvin implies that the quantity of marijuana found in his pocket was so negligible that the court could not find that he "possessed" it. The cases have repeatedly indicated that the statute does not require the possession of any specific quantity of narcotics. (*People* v. *One 1941 Buick Club Coupe, supra,* 72 Cal.App.2d 593; *People* v. *One 1940 Buick Sedan* (1945), 71 Cal.App.2d 160 [162 P.2d 318];

*People* v. *One 1940 Buick 8 Sedan* (1945), 70 Cal.App.2d 542 [161 P.2d 264].)

 Finally, the findings indicate the court based its decision on Galvin's possession of marijuana, rather than upon the possession of narcotics by other passengers. Since the court could properly infer from the presence of marijuana in Galvin's pocket that he knew that it was there, and that it had been there when he wore the jacket in the car, sufficient substantial evidence upholds the finding of the trial court that the subject vehicle was used to "keep, deposit, and transport narcotics. . . ."

Appellant Galvin's contentions that the trial court committed prejudicial error in that the court (1) refused to allow him to present a witness after the noon recess, (2) uttered remarks showing it had prejudged the case, and (3) rendered judgment prior to the submission of the case, cannot prevail. We note that the decisions cited by Galvin involve the conduct of courts in jury trials; they are not germane to this court trial.

 As to the first point, Galvin rested after he had taken the witness stand but stated he had another witness that he might be "putting on . . . at 2:00 o'clock," adding, "Actually, I am debating whether to actually put him on." He stated that if the case went "beyond 12:00" he "would like to reserve that right." When the court said it did not "want to come back to hear one witness at 2:00 o'clock," he remarked, "All right." The case did not proceed beyond 12 o'clock and the court rendered judgment; yet Galvin did not object on the ground that all the evidence had not been submitted, he did not request a continuance, and he made no showing of the necessity for such continuance. He requested that respondent prepare findings. Under such circumstances Galvin neither produced the substance of a question on appeal nor preserved by objection in the trial court any point for our consideration. (*Algeri* v. *Tonini* (1958), 159 Cal.App.2d 828 [324 P.2d 724]; *Zar* v. *Zar* (1957), 154 Cal.App.2d 681 [316 P.2d 685].)

 As to the second point, the trial judge's challenged remarks could not possibly prove he "prejudged" appellant Galvin's case. During the portion of the case relating to the reasonable investigation of the bank, the judge said, "Here is a man driving around full of marijuana, bumping into automobiles, and he could have killed a lot of people, and they finance his car." Since the court made the statement *after*

both parties had submitted all their evidence as to Galvin's violation of section 11610, the court at that point had received all the facts upon which to make its decision. The informal observation of the court certainly came too late to show any prejudgment on appellant Galvin's violation of section 11610.

Appellant Galvin's third point that the court rendered judgment before the submission of the case proves to be equally unavailing. Respondent rested as to the registered owner. The record indicates that appellant Galvin likewise rested, except as to the possibility of the afternoon witness—a matter which we have discussed *supra*. Even assuming the court rendered judgment before both parties technically rested, neither party objected or indicated that any further testimony was to be submitted.

Since substantial evidence supports the judgment and appellants suffered no prejudicial error, we find no basis for reversal.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.