465 P.2d 360

STATE of Arizona, Appellee,

v.

Robert QUINONES, Appellant.

No. 2033.

Supreme Court of Arizona,
In Banc.

Feb. 19, 1970.

Rehearing Denied March 24, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Meyer & Wortman, by Dennis J. Wortman, Phoenix (later substituted by Robert A. Wertsching, Phoenix), for appellant.

UDALL, Justice.

Robert Quinones (hereinafter referred to as the defendant) appeals from his conviction of the crime of illegal possession of heroin. His appeal is based upon two grounds. Defendant's first ground for appeal is that he was tricked by an arresting officer into giving an incriminating admission of his address. Defendant asserts that the admission into evidence of his statement of his address violated his constitutional rights under the rationale of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Secondly, defendant argues that the state failed to offer sufficient evidence as to whether the amount of narcotics involved was susceptible of use, and further that the trial court erred in its instruction to the jury on what constitutes a usable amount of narcotics.

Defendant was arrested on May 28, 1968 pursuant to a valid warrant for petty theft. The warrant was served by three members of the Narcotics Division of the Phoenix Police Department. The arrest took place in a one-room apartment in Phoenix where defendant and three other adults were then present.

As soon as he was placed under arrest, defendant was advised of his constitutional rights in the form of "Miranda warnings."[1] Defendant was asked whether he understood the warnings, and he indicated that he did. The officer who administered the warnings then indicated he had no questions for defendant at that time.

Immediately after the arrest, the officers seized several articles lying on a table in the room. These articles, associated with the use of heroin, included hypodermic needles, a packet of paper containing a light brown substance, a spoon, a cotton wad and a cup of water.

All of the persons in the room, including defendant, were then warned that the officers suspected the presence of narcotics and that everyone in the room was to remain until a test could be run to determine the presence of narcotics. When the test result was positive, all those in the room were arrested for a narcotics violation and a search of the room was instituted.

Thereafter, while defendant was still in the apartment, one of the arresting officers asked defendant several routine questions pursuant to filling out a "booking slip". When asked his address, defendant responded that his address was the apartment wherein the evidence of narcotics was found. Defendant here urges that the introduction of this statement as evidence at trial to show possession of narcotics violated his constitutional rights.

Defendant argues that the arresting officers obtained this statement by trickery. Defendant's position is that, under the guise of asking routine questions pursuant to the misdemeanor arrest for petty theft, the officer violated defendant's rights by obtaining an incriminating admission relating to a wholly separate felony of narcotics possession. In support of his position defendant relies upon Miranda v. Arizona, wherein the Supreme Court stated as follows:

"Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege."

Miranda v. State of Arizona, 384 U.S. 436 at 476, 86 S.Ct. 1602 at 1629 (1966).

We accept defendant's abstract proposition that serious constitutional questions are raised when police officers, under the guise of investigating one crime, ask questions pertaining to an entirely different crime without advising the defendant that he is under suspicion of the second crime. However, the record in this case simply does not show that such circumstances occurred here.

The trial judge in this case held a hearing in chambers on the issue of the voluntariness of defendant's statement of his address. At this hearing at least two of the arresting officers testified that defendant was twice given "Miranda" warnings; first when he was arrested on the petty theft warrant, and second, when he was arrested on the charge of possession of narcotics.

1. These warnings were as follows: "You have the right to remain silent. Anything you say can be used against you in a Court of Law. You have the right to the presence of an attorney to assist you prior to questioning, and to be with you during questioning if you so desire. If you cannot afford an attorney, you have the right to have an attorney appointed for you prior to questioning."

In addition, as noted above, the evidence showed that as soon as the arresting officers saw objects associated with narcotics in the room, they warned everyone in the room that the presence of narcotics was suspected. At oral argument counsel for defendant commendably stated that this fact had escaped his notice in the record.[2]

 There can be no question that defendant was fully informed that he was at least under suspicion of the felony of narcotics possession. Defendant's contention here that he was tricked without knowledge of this fact is clearly controverted by the record.

 Defendant's only further contention with respect to the admissibility of his statement is that even though he had been warned of his constitutional rights, and even though he was aware that he was suspected of narcotics possession, he should have been given some further warning before being asked his address. This contention must be rejected. The trial court determined that defendant's statements were made knowingly, voluntarily and intelligently. Once a defendant is fully and fairly apprised of his rights, there is no requirement that warnings be repeated each time that questioning is commenced. State v. Jennings, 104 Ariz. 6, 448 P.2d 62 (1968); People v. Hill, 39 Ill.2d 125, 233 N.E.2d 367 (1968).

 Defendant's second ground for this appeal relates to the issue of "usable amount" of narcotics. Defendant argues that the State failed to offer evidence of usable amount, and further that the jury was improperly instructed on this question.

The amount of heroin involved here is very small, amounting to only .36 milligrams. Defendant correctly points out that under State v. Moreno, 92 Ariz. 116, 374 P.2d 872, and State v. Urias, 8 Ariz.App. 319, 446 P.2d 18 (1968), where the amount of narcotics involved is so small as to not be within the realm of an uninformed layman's knowledge of usability, there must be evidence presented by the State as to its usability and also an instruction to the jury as to the necessity of finding a usable amount.

An examination of the transcript in this case reveals that both of these criteria were met here. This is true despite the fact that the briefs for both parties proceed inexplicably upon the assumption that no testimony of usable amount was presented and no instruction on usable amount was given to the jury.

The transcript shows that expert testimony was introduced that the amount of narcotics found "could be effectively used as a narcotic heroin." The instructions to the jury included instructions on "usable amount" substantially identical to those instructions approved by this court in State v. Moreno.[3] We therefore must conclude there is no foundation in the record for the errors charged by defendant.

Defendant also suggests that there should have been additional testimony and an instruction on whether the substance was usable "under the known practice of narcotics users." Defendant argues that without such specific evidence and instruction,

2. Defendant's counsel on appeal did not handle the case at trial.

3. The court instructed the jury in the case before us in pertinent part as follows:

"You are instructed that the elements of the crime charged, to-wit, unlawful possession of narcotics are these:

(1) The person charged must have been in possession of a substance;

(2) The substance must have been a narcotic drug;

(3) *The substance must have been in such quantity and quality to be susceptible of use as a narcotic:*

(4) The possessor must have knowledge of the possession of such substance.

"If you believe from the evidence beyond a reasonable doubt that the defendant possessed a narcotic drug known as heroin, then you are instructed the weight or amount of the drug is immaterial *so long as you find that there was a sufficient amount of such drug as to be usable as a narcotic.*"
[Emphasis supplied]

a conviction could be had on the basis of a small amount of a narcotic substance found in vacuum cleaner sweepings from a floor. This hypothetical situation may well present special problems. But we find no requirement for additional expert testimony or jury instruction under the circumstances of the instant case. See State v. Moreno, supra, State v. Urias, supra. Here the narcotic substance was found in a packet, lying on a table. Moreover there was expert testimony explaining how the substance in the packet could be placed in a form for injection by narcotics users. In addition, the packet itself, containing the actual substance in its original form, was admitted into evidence and shown to the jury.

We accordingly must conclude that sufficient evidence was presented on the question of "usable amount", and that the jury was properly instructed on this question.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and McFARLAND and HAYS, JJ., concur.